IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

LaTOYA MONROE,                          :
                          Plaintiff, :      CIVIL ACTION
                                        :
              v.                        :      JURY TRIAL DEMANDED
                                        :
EASTON AREA SCHOOL DISTRICT,            :      No.:
                          Defendant. :

## C O M P L A I N T

1.      This is a race discrimination case based on the post-Civil War and more recent federal and Pennsylvania anti-discrimination laws.

2.      Plaintiff LaToya Monroe was one of the first and only African-American administrators ever employed by defendant Easton Area School District ("EASD"). Not long after she was hired as the School District's Director of Human Resources in September 2007, Ms. Monroe discovered a pervasive pattern of race discrimination in EASD's hiring and employment practices. Over the next several months, Ms. Monroe advocated for an end to these practices, both by entreating the Easton Area School Board to put a stop to them and by providing deposition testimony that supported an African-American employee who had sued EASD for its discriminatory conduct.

3.      Rather than joining Ms. Monroe in her efforts to end the discriminatory practices that had become entrenched in the School District, EASD fired LaToya Monroe on May 28, 2008 -- two weeks after she had received a favorable performance evaluation by the Acting Superintendent of EASD. Ms. Monroe was replaced by a white male, leaving no

African-Americans within the administrative ranks of EASD. LaToya Monroe's firing was an act of race discrimination and came in retaliation for her persistent advocacy against racial discrimination by EASD.

4.    To vindicate and remedy the violation of her rights, Ms. Monroe brings this action against EASD pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq*.; Section 1 of the Civil Rights Act of 1866 ("Section 1981"), 42 U.S.C. § 1981, as amended; and Section 5(e) of the 1955 Pennsylvania Human Relations Act ("PHRA"), 43 Pa.C.S.A. § 955(e).

## Jurisdiction

5.    Subject matter jurisdiction over Ms. Monroe's Title VII claim is conferred on the Court by 42 U.S.C. § 2000e-5(f)(3) and over her Section 1981 claim by 28 U.S.C. § 1343(a)(3) and (4).

6.    In addition to her Title VII and Section 1981 claims, Ms. Monroe has parallel claims of race discrimination, harassment and retaliation against the defendant based on the provisions of the Pennsylvania Human Relations Act, 43 Pa.C.S.A. § 951 *et seq*. ("PHRA"). The Court has supplemental jurisdiction over those PHRA claims pursuant to 28 U.S.C. § 1367(a).

**Venue**

7.    Venue over Ms. Monroe's Title VII claim is properly laid in this Court pursuant to 42 U.S.C. § 2000e-5(f)(3) because all the relevant events giving rise to this action arose in this judicial district.  For the same reason, venue over her Section 1981 and PHRA claims is properly laid in this Court pursuant to 28 U.S.C. § 1391(b).

**Parties**

8.    Plaintiff  LaToya Monroe is a resident and citizen of the Commonwealth of Pennsylvania.  She resides at 423 Holly Road, Yeadon, Pennsylvania 19050.

9.    Defendant Easton Area School District maintains its principle place of business at 1801 Bushkill Drive, Easton Pennsylvania 18040.

**Exhaustion of Administrative Remedies**

10.    On September 5, 2008, Ms. Monroe filed a Complaint (Docket No. 200801303) against defendant EASD with the Pennsylvania Human Relations Commission ("PHRC"), alleging she was harassed and terminated from employment on account of her race and in retaliation for her advocacy against racial discrimination, in violation of Section 5(a) of the PHRA, 43 Pa.C.S.A. § 955(a).

3

11.    The PHRC duly cross-filed Ms. Monroe's complaint with the Equal Employment Opportunity Commission ("EEOC") which docketed it at EEOC Charge No. 17F200960191.

12.    Via correspondence dated October 21, 2009, the EEOC notified Ms. Monroe of her right to file suit against the defendants pursuant to the provisions of Title VII.

13.    This lawsuit has been timely filed within the suit-filing provisions of Title VII and the PHRA.

**Statement of Facts**

14.    LaToya Monroe was hired by EASD in September 2007 as the School District's Director of Human Resources.

15.    At the time of her hire, Ms. Monroe was the only African-American in an administrative position within EASD.

16.    Though African-American students comprise roughly 20 percent of the School District's student population, only two of 20 principals within the School District are African-American (and one of those has filed a separate lawsuit against EASD alleging racial discrimination).

17.    From the outset of her employment, Ms. Monroe was treated differently from her white counterparts within the administrative ranks of EASD.

4

18.    As with other EASD administrators, Ms. Monroe was hired pursuant to a one-year employment contract, to be renewed annually at the discretion of the Easton Area School Board.  Unlike other EASD administrators, Ms. Monroe was not provided with a copy of her employment contract -- despite her repeated requests -- until December 2007, three months after her employment began.

19.    Moreover, unlike other EASD administrators, at no time during her employment was Ms. Monroe given a written description of her job responsibilities or a written summary of her reporting responsibilities.  Again, her repeated requests to EASD for this information were ignored.

20.    At the time of her hire, Ms. Monroe was promised that she would report directly to the School District's Acting Superintendent.  This was critical to her ability to perform her job successfully. Moreover, this direct reporting relationship would have been consistent with the prior practice for Ms. Monroe's position.

21.    Nonetheless, shortly after Ms. Monroe began working at EASD, she was told that she would not report to the Superintendent, but rather to the School District's Business Manager.

22.    Also at the time of her hire, Ms. Monroe was promised that her salary would be commensurate with that of the School District's Business Manager.  Instead, her salary was aligned with the School District's Directors of Education and Technology, resulting in a salary shortfall of roughly $14,000.00 per year.

23.    By correspondence dated January 21, 2008, Ms. Monroe drew these issues to the attention of Patrick Vulcano, then President of the Easton Area School Board.

24.    In addition to describing the problems that she had personally encountered since joining EASD, Ms. Monroe described a pervasive problem with racial discrimination in the hiring and employment practices of the School District.

25.    Specifically, Ms. Monroe informed Mr. Vulcano that she had discovered a so-called "Minority List" from which minority job applicants were chosen to be given "courtesy interviews."

26.    As Ms. Monroe came to learn, the minority list was created at a job fair held jointly by the School District and the local chapter of the NAACP. The list included the names, contact information, and short qualification descriptions for minority applicants who had attended the fair.

27.    From this list, the School District was to choose facially qualified applicants for so-called "courtesy interviews" when there were job openings within the district.

28.    As with any job applicant, a minority applicant who had a successful interview in the School District would be required to complete a formal application for a position within the district.

29.    As Ms. Monroe learned, none of the people on the "minority list" was ever actually chosen for a job nor did any of the members on the list even reach the point of providing a formal application to the school district.

30.    As such,  the "minority list" was both an insincere effort at affirmative action and the list was potentially violative of federal discrimination laws -- points that Ms. Monroe drew to the attention of School Board President Vulcano.

31.    The School District's lack of genuine commitment to affirmative action was also made clear to Ms. Monroe by EASD's Acting Superintendent Joseph Kish.  When Ms. Monroe told Mr. Kish that she hoped to add more African-Americans to the District's teaching roster, Mr. Kish compared EASD to the Philadelphia School District and noted that the addition in Philadelphia of more African-American teachers had not improved that city's educational problems.

32.    In her January letter to the School Board, Ms. Monroe additionally informed Mr. Vulcano and the Board of specific acts of discrimination that  had occurred within the School District's teaching ranks, where African-American teachers were routinely denied salary increases they were due.

33.    Ms. Monroe concluded her January 21, 2008 correspondence to School Board president Vulcano as follows:

> As a minority in the Easton Area School District, I can affirm that the mistreatment of minorities is a concern that needs to be addressed immediately. I have just presented a few examples of my concerns and many more exist. Failure to take corrective action will leave our district vulnerable to claims of discrimination with lawsuits to follow. I believe I was hired to affect change. I implore you to take this matter seriously and allow me the span of control to perform my duties.  I humbly request your guidance for a course of action that will address

these concerns and transform the dysfunctional culture and discriminatory practices that degrade our district.

34.    Mr. Vulcano and the School Board neither responded to Ms. Monroe's January 21, 2008 correspondence nor took any action to address the concerns she had raised.

35.    To the contrary, immediately after she voiced her concerns to the Board, the direct racial mistreatment of Ms. Monroe intensified. She was ostracized from meetings. Superintendent Kish refused to meet or even speak with Ms. Monroe in the months following the letter and key job responsibilities were removed from her office.

36.    Ms. Monroe wrote again to Mr. Vulcano and School Board Vice President Patricia Fisher on February 21, 2008, reiterating her concerns about racial harassment and discrimination within the School District and describing the increased harassment to which she had been subject.

37.    In her February correspondence, Ms. Monroe detailed the retaliatory and harassing conduct directed both against her and against her staff as a consequence of Ms. Monroe's participation in a federal race discrimination lawsuit brought by Clifford Ransom, Sr., an African-American employee of the School District's security department. See Ransom v. Easton Area School District, Civil Action No. 07-2999 (E.D.Pa.).

38.    As explained by Ms. Monroe in her correspondence, the Ransom lawsuit had revealed that management-level employees in the School District had engaged in racist conduct, including the use of the word "nigger." Ms. Monroe, who had provided deposition testimony that was supportive of Mr. Ransom in the federal lawsuit, requested that Mr.

8

Vulcano authorize an internal investigation into the allegations of pervasive racial harassment and discrimination that were revealed in the Ransom lawsuit.

39.    Also in the February 2008 correspondence, Ms. Monroe noted that she had been stripped of the responsibility for handling internal harassment complaints -- a responsibility that had traditionally resided within her province as Director of Human Resources.  Ms. Monroe again requested that the School Board finalize her position description and clarify her reporting responsibilities.

40.    As she had with her first letter to Mr. Vulcano and the School Board, Ms. Monroe concluded her February 21, 2008 letter with a plea that the School Board take seriously the issue of racial discrimination within the School District:

> As I stated in my previous letter, I believe I was brought to Easton to affect change in a department that was in dire need of reparation.  I will remain committed to this ideal. I can only hope that the Easton Area School Board members will share in my vision of a district where all individuals are respected and embraced for their unique contributions to our community.

41.    Again, Mr. Vulcano and the School Board neither responded to Ms. Monroe's February 21, 2008 correspondence nor did they take any action to address the concerns that she had raised.

42.    In April 2008, roughly two months after Ms. Monroe's follow-up correspondence to Mr. Vulcano and the School Board, Mr. Vulcano recommended that his daughter, Michelle Vulcano,  be appointed to a fifth grade teaching position within EASD.

43.    Ms. Monroe opposed the appointment of Ms. Vulcano for several reasons: first, Ms. Vulcano had not yet received her teaching certification, and thus was not qualified for the position;  second, the job had not been posted or advertised as required by School District policy and practice;  and third, Ms. Monroe believed that other candidates, including minority candidates, were qualified for the position and would have applied for the position had it been advertised.

44.    As a result of Ms. Monroe's opposition, the position was posted in April 2008 and 19 certified applicants applied. Notwithstanding that Michelle Vulcano was not qualified for the position, Mr. Vulcano still pressed Ms. Monroe to hire his daughter. Ms. Monroe refused.

45.    At a School Board meeting on May 28, 2008, the Board terminated Ms. Monroe's employment effective immediately -- four months before the contractual term of her  employment was slated to end.

46.    In a letter dated May 28, 2008, Board President Vulcano informed Ms. Monroe of the Board's decision, instructed her that she was not to report to work for the balance of her contract term, and directed her to remove her personal possessions from her office.

47.    Ms. Monroe's termination was not based on her performance.  To the contrary, on May 14, 2008 -- two weeks before her termination -- Ms. Monroe received a favorable performance review from Acting Superintendent Kish.  As Mr. Kish summarized, "You are to be commended for your efforts as I have observed your hard work in restructuring our

Human Resources Department. Your initiatives, policies, procedures and insights have made the department more effective and efficient. I encourage you to continue your efforts in bringing about change in the area of Human Resources."

48.    At no time from Ms. Monroe's initial letter to Mr. Vulcano on January 21, 2008 through to her termination on May 28, 2008 did the School Board take any action to address her expressed concerns with pervasive race discrimination in the School District.

49.    Ms. Monroe was replaced by a white male, leaving no African-Americans within the administrative ranks of EASD.

50.    LaToya Monroe was terminated because of her race and in retaliation for her persistent advocacy against racial discrimination within EASD.

51.    Defendant EASD terminated Ms. Monroe's employment -- and engaged in direct racial harassment and discrimination against Ms. Monroe -- in willful and reckless disregard of her rights under Title VII, Section 1981, and the PHRA.

52.    As a direct and proximate result of those violations of her rights, Ms. Monroe has suffered a loss of earnings and earning capacity including, but not limited to, a loss of wages and other fringe benefits to which she was and is entitled.

53.    As a further direct and proximate result of these violations of her rights, Ms. Monroe has suffered physical pain and sickness, emotional distress, humiliation, harm to her reputation, loss of confidence and self-esteem and loss of the enjoyment of life's pleasures.

## COUNT I

### Violation of Title VII:
### Plaintiff LaToya Monroe  v. Defendant Easton Area School District

54.    Ms. Monroe repeats and incorporates by reference the allegations set out in paragraphs 1 through 53 of her Complaint.

55.    By terminating her employment on account of her race and in retaliation for her persistent advocacy against racial discrimination within EASD -- and by engaging in direct racial harassment against Ms. Monroe -- defendant EASD intentionally discriminated against plaintiff Monroe in violation of Section 703(a)(1) of Title VII, 42 U.S.C. § 2000e-2(a)(1).

## COUNT II

### Violation of the PHRA:
### Plaintiff LaToya Monroe  v. Defendant Easton Area School District

56.    Ms. Monroe repeats and incorporates by reference the allegations set out in paragraphs 1 through 55 of her Complaint.

57.    By terminating her employment on account of her race in retaliation for her persistent advocacy against racial discrimination within EASD -- and by engaging in direct racial harassment against Ms. Monroe -- defendant EASD intentionally discriminated against plaintiff Monroe in violation of  Section 5(a) of the PHRA, 43 Pa.C.S.A. § 955(a).

## COUNT III

### Violation of 42 U.S.C. § 1981:
### Plaintiff LaToya Monroe  v. Defendant Easton Area School District

58.    Ms. Monroe repeats and incorporates by reference the allegations set out in

paragraphs 1 through 57 of her Complaint.

59.    By terminating her employment on account of her race in retaliation for her

persistent advocacy against racial discrimination within EASD -- and by engaging in direct

racial harassment and discrimination against Ms. Monroe -- defendant EASD intentionally

discriminated against plaintiff Ross in violation of 42 U.S.C. § 1981, as amended by the Civil

Rights Act of 1991, 42 U.S.C. § 1981(a).

### Prayer  for  Relief

WHEREFORE, plaintiff LaToya Monroe respectfully requests the Court to

enter judgment in her favor against defendant EASD and to include in its judgment the

following relief:

      a.    an award of back pay, together with prejudgment interest;

      b.    to the extent feasible, reinstatement to a suitable position at EASD;

      c.    to the extent reinstatement to a suitable position is not feasible, an

              award of front pay;

      d.    an award of non-economic compensatory damages as authorized by

              Title VII and the PHRA;

13

e.    an award of punitive damages as authorized by Title VII and Section

1981;

f.    an award of reasonable counsel fees and costs; and

g.    such other legal and equitable relief as may be just and proper under the

circumstances.

### JURY DEMAND

Ms. Monroe demands a trial by jury on all the legal claims set out in her

Complaint.

RAYNES McCARTY

By: _____

Harold I. Goodman, Esquire
Daniel Bencivenga, Esquire
1845 Walnut Street
20th Floor
Philadelphia, PA 19103
215 - 568 - 6190

Attorneys for Plaintiff LaToya Monroe

Dated:    January 6, 2010

14